**SAN FRANCISCO NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Plaintiff–Appellant,**

v.

**SAN FRANCISCO UNIFIED SCHOOL DISTRICT; Board of Education of the State of California; Superintendent of Public Instruction, Defendants–Appellees.**

No. 00–16864.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2001.

Filed April 1, 2002.

---

Thomas I. Atkins, Brooklyn, NY, for the plaintiffs-appellants.

James L. Hunt, Carter M. Stewart, McCutchen, Doyle, Brown & Enersen LLP, San Francisco, CA, for the plaintiffs-appellants.

Peter Graham Cohn, Petaluma, CA, for the plaintiffs-appellants.

Eve Jefferson Patterson, Michael Harris, Lawyers' Committee for Civil Rights, San Francisco, CA, for the plaintiffs-appellants.

Louise H. Renne, David Campos, San Francisco City Attorney, San Francisco, CA, for defendants-appellees San Francisco Unified School District, Board of Education, and Superintendent of the San Francisco Unified School District.

Robin B. Johansen, Thomas A. Willis, Remcho, Johansen & Purcell, San Leandro, CA, for defendant-appellee State Superintendent of Public Instruction.

David C. Girard, Anthony K. Lee, Girard & Green LLP, San Francisco, CA, for Ho intervenors-appellees.

Before HUG, D.W. NELSON and HAWKINS, Circuit Judges.

D.W. NELSON, Circuit Judge:

In this case we decide whether a civil rights plaintiff, based solely on its status as a prevailing party in an original action, may be eligible to recover attorney's fees under 42 U.S.C. § 1988 for defending its consent decree from a collateral attack brought by a third party in a subsequent action. We hold that it may, but we affirm the district court's denial of fees in this case as a valid exercise of the district court's discretion.

## FACTUAL AND PROCEDURAL BACKGROUND

The San Francisco National Association for the Advancement of Colored People ("NAACP") appeals the district court's denial of its motion for attorney's fees. NAACP won a consent decree 18 years ago in a school desegregation suit brought against the San Francisco Unified School District and others. Students of Chinese descent recently claimed that the consent decree unconstitutionally relies on race as a determining factor in student placement. NAACP defended the consent decree's constitutionality and now seeks attorney's fees for its work. Because these cases have been described in detail elsewhere, see *San Francisco NAACP v. San Francisco Unified School District*, 484 F.Supp. 657 (N.D.Cal.1979), and *Ho by Ho v. San Francisco Unified School District*, 147 F.3d 854 (9th Cir.1998), only a brief review is provided here.

In 1978, NAACP filed a class action suit, on behalf of all San Francisco Unified School District schoolchildren, seeking desegregation of the district. Five years later, the parties agreed to a consent decree that provided comprehensive relief targeting a wide range of the School District's activities. The consent decree provided for, among other things, a race-based student assignment system among schools, expressed in Paragraph 13 of the decree. The decree also required all parties, including NAACP, to defend the decree's legality from any later attack.

District Judge William Orrick approved the consent decree as well as attorney's fees and costs for NAACP. Since the consent decree's approval, Judge Orrick has been involved in monitoring the decree

and has approved multiple fee requests by NAACP for post-decree monitoring activities.

In 1994, schoolchildren of Chinese descent filed an equal protection challenge to the decree ("the *Ho* action"), objecting particularly to Paragraph 13. They contended that the NAACP consent decree was the source of an allegedly illegal system of racial classifications and quotas by which the School District was assigning students to schools. As a related case to the NAACP action, the *Ho* action was also assigned to Judge Orrick.

The *Ho* action originally named as defendants the San Francisco Unified School District; the district's School Board members; the local Superintendent; the California State Board of Education; the State Superintendent of Public Instruction; and the State Department of Education. In 1995, the district court held that NAACP was a necessary party to the action and ordered that NAACP be added as a defendant.

The parties reached a settlement agreement on the day of trial. Judge Orrick later described the material terms of the settlement as follows:

1. The Consent Decree would terminate no later than December 31, 2002, subject to Court approval;

2. Paragraph 13 would be modified so that race and ethnicity would not be the primary or predominant consideration in determining student admission criteria, and the School District would not assign or admit any student to a particular school, class or program on the basis of race or ethnicity of that student, except as related to the language needs of the

student or otherwise to assure compliance with controlling federal or state law; and

3. Paragraph 12 of the Consent Decree would be modified to provide that the School District may request, but not require, that parents and/or students identify themselves by race or ethnicity at the time of actual enrollment, and that any request for racial or ethnic data will be optional, except as required by state or federal statute or regulation, and shall contain a "decline to state" provision.

After the *Ho* action settled, the district court granted over $1.2 million in attorney's fees to the *Ho* plaintiffs. The parties agreed this award would be paid only by the city and state defendants, not by NAACP.

Subsequently, NAACP brought a motion in the original 1978 action for $951,622.87 in attorney's fees and costs expended in opposing the *Ho* action. NAACP sought fees from the 1978 action defendants, namely, the San Francisco Unified School District, the California State Board of Education, the California State Department of Education, and the State Superintendent of Public Instruction. All of these parties were also among NAACP's co-defendants in the *Ho* action. On September 1, 2000, the court denied the motion. NAACP now appeals the district court's denial.

## DISCUSSION

NAACP argues that it is statutorily eligible for, and deserves, a fee award in the original NAACP action for its work opposing the *Ho* action.[1] Defendants counter

---

1. The district court also determined that NAACP does not warrant attorney's fees for its participation as a defendant in the *Ho* litigation, when that litigation is treated as a separate suit for attorney's fee purposes. NAACP does not challenge this determination on appeal. It challenges only the court's determination that NAACP does not warrant

that the Supreme Court has indicated that plaintiffs in NAACP's situation are barred from recovering fees for fending off collateral attacks. Defendants also assert that even if fees are permitted in this situation, fee awards lie squarely within the district court's discretion.

In federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. We review a district court's decision regarding whether to award attorney's fees for abuse of discretion. *Gilbrook v. City of Westminster,* 177 F.3d 839, 875 (9th Cir.1999). Factual findings underlying a district court's determination of prevailing party status are reviewed for clear error. *Goehring v. Brophy,* 94 F.3d 1294, 1304 (9th Cir.1996). However, any elements of legal analysis that figure in the district court's decision are reviewed *de novo. Keith v. Volpe,* 833 F.2d 850, 854 (9th Cir.1987).

### 1. NAACP is eligible for fees.

██ It is settled law in this circuit that a district court has discretion to award fees to a prevailing party in consent decree litigation for work reasonably spent to monitor and enforce compliance with the decree, even as to matters in which it did not prevail. *See Volpe,* 833 F.2d at 855–57 (9th Cir.1987). However, the parties dispute whether a district court has similar discretion to award fees to an original prevailing party who later defends a decree against a collateral attack in a separate action. We hold that a fee award is not precluded in these circumstances.

The Supreme Court has granted fees to a plaintiff for defending its consent decree from a collateral attack brought in a separate lawsuit. *See Penn. v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 552–53, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*"Delaware Valley"*). In that case, plaintiffs secured a federal consent decree requiring the Commonwealth of Pennsylvania to implement a program mandated by the Clean Air Act. State legislators hostile to the consent decree brought a separate suit, in state court, challenging the decree. *See Burd v. Penn.,* 66 Pa. Cmwlth. 129, 443 A.2d 1197 (1982). When the Commonwealth appealed the state court suit to the Supreme Court of Pennsylvania, the *Delaware Valley* plaintiffs submitted an *amicus* brief supporting the Commonwealth. *See Delaware Valley,* 478 U.S. at 553 n. 1, 106 S.Ct. 3088. The Commonwealth lost the appeal, and the Supreme Court of Pennsylvania enjoined the state from implementing the decree (though this injunction was subsequently invalidated in federal court). *See Scanlon v. Penn.,* 502 Pa. 577, 590, 467 A.2d 1108 (1983); *Del. Valley Citizens' Council for Clean Air v. Penn.,* 755 F.2d 38, 45 (3rd Cir.1985).

The *Delaware Valley* plaintiffs then requested and received, in their original federal court action, an award of attorney's fees for their work in filing the *amicus* brief before the Supreme Court of Pennsylvania.[2] The Supreme Court affirmed this award, as well as a fee award compensating plaintiffs for post-decree lobbying of an administrative body. *Delaware Valley,* 478 U.S. at 553 n. 1, 561, 106 S.Ct. 3088.

---

attorney's fees in the *original* action for work done defending the consent decree.

**2.** Though plaintiffs' fees were governed by § 304(d) of the Clean Air Act, the Supreme Court noted the common purposes between this section and § 1988, and interpreted both attorney's fee provisions "in the same manner." *Delaware Valley,* 478 U.S. at 560, 106 S.Ct. 3088.

The Court reasoned that "the work done by counsel in these two phases was as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom which secured Delaware Valley's initial success in obtaining the consent decree." *Id.* at 558, 106 S.Ct. 3088.

The parallels to this case are clear. The court in *Delaware Valley* did not express any reservation about awarding fees for work done defending the consent decree from the state legislators' "collateral attack." *See Del. Valley Citizens' Council for Clean Air v. Penn.*, 755 F.2d 38, 42 (3d Cir.1985) (referring to the state suit as a "collateral attack" on the consent decree). Rather, the court held that the work was compensable because it was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Delaware Valley*, 478 U.S. at 561, 106 S.Ct. 3088 (internal quotations omitted).

Although this court has followed the general standard in *Delaware Valley* to permit § 1988 fees for post-judgment work, this is the first time we have held that plaintiffs can recover § 1988 fees (1) in an original action, (2) for defending a decree from collateral attack by third parties, and (3) based on work done in a separate lawsuit.[3]

By contrast defendants argue, and the Eighth Circuit would seem to agree, that another Supreme Court case casts doubt on the Delaware Valley rationale we embrace here. In *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) ("*Zipes*"), a flight attendants' union intervened to challenge the settlement of a sex discrimination action brought by female flight attendants against TWA. After successfully fending off the intervenor's challenge, plaintiffs sought fees from the intervenor for defending the consent decree. The Supreme Court held that plaintiffs may not collect fees from an intervenor who challenges a consent decree unless the challenge is frivolous, unreasonable, or without foundation. *Id.* at 761, 109 S.Ct. 2732.

The *Zipes* majority reasoned that third parties affected by a consent decree "need not intervene but may attack the decree collaterally—in which suit the original Title VII plaintiff defending the decree *would have no basis for claiming attorney's fees.*" *Id.* at 762, 109 S.Ct. 2732 (emphasis added). Relying on this language, the Eighth Circuit has held that fees cannot be awarded to a plaintiff, in an original action, for defending its consent decree from a collateral attack brought in a separate suit. *See Jenkins by Agyei v. Mo.*, 967 F.2d 1248, 1252 (8th Cir.1991).

The Supreme Court's statement that plaintiffs would have no basis for claiming attorney's fees in a third-party collateral attack has apparent relevance here: in *Ho*, NAACP defended its consent decree from just such an attack. We believe, however, that the Eighth Circuit misreads *Zipes* and that, properly understood, the case does not preclude an award to NAACP for two reasons.

First, the language quoted in *Zipes* is dicta and should not be taken to overrule the express holding of *Delaware Valley*, which, as discussed above, awarded fees in circumstances nearly identical to those

---

**3.** Although this court upheld an award of post-judgment fees to plaintiffs in *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir.1995), in compensation for filing an *amicus* brief be-fore a separate court, we did so based on the particular attorney's fee provisions of the consent decree in that case.

here. *Cf. Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 1517, 149 L.Ed.2d 517 (2001) ("[T]his Court is bound by holdings, not language").

Second and more importantly, *Zipes* is easily distinguishable from the circumstances here and in *Delaware Valley.* *Zipes* addressed only the availability of fees from an intervenor. Its dicta therefore refers only to plaintiff's ability to seek fees from the intervenor (*i.e.,* the would-be plaintiff in a collateral attack)—not from the original suit's defendants. Here and in *Delaware Valley,* in contrast, plaintiffs seek fees not from a *Zipes* intervenor, but from the defendants in the original civil rights litigation. Thus, while *Zipes* arguably speaks to the availability of fees from the *Ho* plaintiffs, it does not control NAACP's ability to seek fees from the defendants in this case.[4]

### 2. The district court did not abuse its discretion in denying fees.

■ Holding that civil rights plaintiffs are eligible for fees in cases such as this answers only half of the question before us. *See Bullfrog Films Inc. v. Wick,* 959 F.2d 782, 786 (9th Cir.1992) (affirming a denial of fees because "neither [*Delaware*

*Valley* nor *Keith v. Volpe*] holds that the district court *must* make such an award," and holding that the district court did not abuse its discretion in denying fees). The other half of the question is: Did the district court abuse its discretion in denying fees under the circumstances in this case?

Fees should be available to NAACP if the work done was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation."[5] *Delaware Valley,* 478 U.S. at 561, 106 S.Ct. 3088 (internal quotations omitted); *Stewart v. Gates,* 987 F.2d 1450, 1452 (9th Cir.1993). Here, the district court mentioned two circumstances that, it felt, made an award of fees unwarranted: NAACP's lack of success in its defense of the consent decree, and the fact that some defendants already paid fees to the *Ho* plaintiffs and should not be forced to finance both sides of the litigation. The district court, at the close of its opinion, stated the following:

> The Court declines to exercise its discretion to award the NAACP fees. The NAACP achieved very little, if any, benefit from its years of litigating the *Ho* action. It lost all of the parts of the

---

4. This distinction comports with the equitable considerations relied upon by the Supreme Court in *Zipes,* namely, that the "losing intervenors . . . have not been found to have violated anyone's rights." *Zipes,* 491 U.S. at 762, 109 S.Ct. 2732. In contrast, the parties from whom fees are sought here and in *Delaware Valley* have been.

5. Of course, work will sometimes satisfy this test even when it is based on different facts and law than the original suit. Such was the case, for example, in *Delaware Valley.* Thus, the district court's inquiry below into whether the *Ho* action and the *NAACP* action were "inextricably intermingled" was inapposite. This Circuit has endorsed a relatedness analysis to determine whether a fee award is appropriate for post-judgment motions, brought *by the plaintiff,* seeking additional relief. *See*

*Bullfrog,* 959 F.2d at 786. But this is not a case, like *Bullfrog,* where a plaintiff is bringing unrelated motions or claims. Instead, NAACP merely seeks to preserve the consent decree it won in the 1978 suit from attack by third-party plaintiffs. In this respect, NAACP's case is akin to *Delaware Valley,* and that case's analysis should control.

In so holding, we note that concern for difference makes good sense in judging offensive (as opposed to defensive) litigation. When a party decides to bring suit, rather than defend against one, the courts must worry about allowing plaintiffs a "free ride" in unrelated segments of its offense. *See Hensley v. Eckerhart,* 461 U.S. 424, 434–35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). No similar concern for defensive litigation exists.

Consent Decree that it fought to defend, and agreed, for the first time, to a termination date for the entire Consent Decree. In light of NAACP's lack of success, the Court finds that it would be patently unfair to require the State and Local defendants to pay both the *Ho* plaintiffs' fees and the NAACP's fees and, thus, finance all sides of the litigation.

These reasons are sufficient under *Delaware Valley* to affirm the district court's decision. *See Delaware Valley*, 478 U.S. at 561, 106 S.Ct. 3088 (acknowledging the district court's "zone of discretion" to award fees). Alternatively, these reasons constitute "special circumstances" supporting the district court's decision to deny NAACP fees under traditional prevailing party analysis. *See Thorsted v. Munro*, 75 F.3d 454, 456 (9th Cir.1996). We therefore hold that the district court did not abuse its discretion, and we AFFIRM the order denying attorney's fees.